## Dunnick v. Harrisburg National Bank and Trust Company

*Richard H. Horn,* for plaintiffs.

*George W. McKee,* for defendants.

SWOPE, P. J., July 24, 1970.—Gertrude Anstine Dunnick died a resident of Dauphin County, Pa., on

April 1, 1967, leaving a revocable deed of trust executed on September 26, 1966, with the Harrisburg National Bank and Trust Company (now by merger the Commonwealth National Bank) as trustee, and a will, admitted to probate on July 18, 1967, appointing the same institution as executor of her estate.

On December 13, 1968, said executor and trustee filed its first and partial account and petition for distribution. On January 22, 1969, at the presentation of said account for audit and confirmation, counsel for plaintiffs announced that a claim was being presented by them against said estate and trust. On February 24, 1969, on petition of plaintiffs, we issued a rule on the executor and trustee to show cause why plaintiffs' claim should not be paid, and on the same day plaintiffs filed exceptions to the trustee's account.* On March 28, 1969, the executor and trustee filed its answer containing new matter to the petition and rule. On May 1, 1969, plaintiffs filed their reply to defendant's new matter. On July 7, 1969, a hearing was held at which time admissions in the pleadings were offered in evidence by both parties as well as certified copies of various papers filed originally in the Orphans' Court of York County, Pa., in the matter of the Estate of J. Nelson Dunnick, late of Springettsbury, York County, Pa., deceased.

A brief examination of the factual background of the case follows: On April 30, 1926, J. Nelson Dunnick, who was the grandfather, through a previous marriage, of plaintiff petitioners in the matter now before us, and Gertrude C. Anstine, later Gertrude Anstine

---

* We are advised by counsel for exceptants that these exceptions, concerning the sale of certain real estate in the State of Florida necessitating ancillary administration in the estate of Mrs. Dunnick in that jurisdiction, have been or will be withdrawn. Accordingly, they will not be treated or disposed of in the within opinion and order.

Dunnick, who is our decedent, entered into an antenuptial agreement. That instrument provided, inter alia, that the future Mrs. Dunnick would receive out of her proposed husband's estate no more than $30,000 for life, with a remainder interest, unless provided otherwise by will, in his heirs.

The parties, subsequent to entering into that agreement were married on May 2, 1926, and thereafter cohabited as man and wife until the death of Dr. Dunnick on October 9, 1950. On June 15, 1951, Mrs. Dunnick filed her election to take against her husband's will, which matter resulted in a settlement agreement, based upon a series of stipulations, the net effect of which was to change her interest from that of a $30,000 life estate to the payment to her of $15,000 outright, with an additional $15,000 held in escrow until the payment of her proportionate share of the Federal estate tax, at which time said unpaid balance was to be paid to her outright, if living, otherwise to her estate.

On October 9, 1951, upon the failure of questions surrounding the estate of Dr. Dunnick to subside, the Orphans' Court of York County made an adjudication therein which included a decree and schedule of distribution, ordering the "restated executors' account" to be confirmed. A large part of said adjudication referred to Mrs. Dunnick's claim against Dr. Dunnick's estate, founded originally on the antenuptial agreement, as modified and supplemented, however, by the stipulation of August 17, 1951, participated in by all parties in interest. A copy of the antenuptial agreement was attached to the executors' petition for adjudication. In its adjudication, the York County court had reference to the stipulation and agreement of August 17, 1951, and also to the stipulation of counsel as to the liability for Federal estate

and Pennsylvania inheritance taxes. The court thereupon approved a deduction, in the form of a credit, amounting to $30,000 ". . . paid (or to be paid) to Gertrude A. Dunnick in settlement of her antenuptial agreement (subject to impact of Federal estate tax) . . ." The court, quoting at length from Dr. Dunnick's will, determined that his three surviving adult and competent children, one of whom was Dana Delano Dunnick, the father of the exceptants herein, were, after said deduction, each entitled to a one-third interest in the balance of Dr. Dunnick's estate. This adjudication was made after a hearing on August 14, 1951, at which both counsel for Mrs. Dunnick and for the executors of her husband's estate were present. Included among those executors was Dana Delano Dunnick, the aforementioned father of plaintiffs, out of whose interest their present claim is derivative.

We are satisfied that of all of the foregoing agreements, stipulations and pronouncements, the adjudication of Judge Gross must be taken as binding upon the parties, not only in Dr. Dunnick's estate, but here as well, it being last in time, subscribed to by all interested parties, and rendered in the light of the antenuptial agreement and the subsequent stipulations pertinent thereto with the intent of superseding same. We are guided in our conclusion by the principle of res judicata as defined in Wallace's Estate, 316 Pa. 148, 153, 174 Atl. 397, 399 (1934):

"Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate

directly to the cause of action in litigation and affect the fund or other subject matter then before the court . . . 'The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule. This is a universal rule . . .' "

That the Orphans' Court of York County had competent jurisdiction is not questioned; Dr. Dunnick, at the time of his death, was a domiciliary of that county. Nor is it contended that the distribution in that estate was determined other than on its merits in Judge Gross' adjudication. We have been offered no significant evidence in the instant case which was not previously considered by Judge Gross, and we are satisfied that his adjudication, which was never reversed, must be taken as final and conclusive between the parties to that suit and their privies.

33 Words and Phrases, page 801, defines a "privy" (who may take advantage of or be bound by a judgment) as one who, after commencement of the action, has "acquired an interest in the subject-matter" affected by the judgment through or under one of the parties, "as by inheritance, succession, or purchase." The Harrisburg National Bank and Trust Company (now by merger the Commonwealth National Bank) certainly stands in the shoes of Gertrude Anstine Dunnick as executor of her estate and in its capacity as trustee under her inter vivos deed of trust. Plaintiffs, as the children and heirs of Dana Delano Dunnick, are claiming through his interest. Gertrude Anstine Dunnick and Dana Delano Dunnick having both been parties to the suit which culminated

in Judge Gross' adjudication, the parties herein, being privy thereto, are bound thereby. The matters determined therein being now res judicata are, accordingly, final and conclusive as to the rights of the litigants presently before us.

It is to the adjudication of Judge Gross, therefore, that we must turn to determine the rights of the parties to the instant controversy. Plaintiffs contend that the court therein acknowledged in Mrs. Dunnick no more than a life interest in a sum aggregating $30,000, with a remainder interest in her husband's legatees. We disagree.

Examining first the specific distributive language of Judge Gross' adjudication, we see that he allowed for a deduction of an "amount ($30,000) paid (or to be paid) to Gertrude A. Dunnick in settlement of her antenuptial agreement (subject to impact of Federal estate tax as hereinbefore set forth)." Thus, the only limitation upon the $30,000 payment to the widow which Judge Gross recognized was the amount to be withheld, as agreed, for Federal estate tax on that sum. The total absence in his adjudication of other language indicating additional limitation upon Mrs. Dunnick's ownership of the sum involved is in itself a very strong indication that the payment was considered and intended by Judge Gross to be without any such additional limitation. The framer of the adjudication, by the very nature of his position, well versed in the terms of art pertinent to transfers of interest cannot be presumed to have considered that Mrs. Dunnick was to receive merely a life estate in the absence of explicit words to that effect in his adjudication. Having clearly enumerated a restriction upon the transfer of a portion of the amount to which the widow was entitled until certain of the estate's tax liabilities had been determined, the fact that Judge Gross did not also employ the additional terms

necessary for a proper recognition of the alleged remainder interest makes it unlikely in the extreme that he either understood or intended the latter to exist. We conclude, therefore, that none does exist.

We bear in mind, also, that the rights of the widow should not be taken away from her by vague language: Zeitchick Estate, 426 Pa. 171, 177, 231 A. 2d 131, 134 (1967). Indeed, the courts of this Commonwealth have always carefully protected the rights of a widow in her husband's estate, particularly, as in this case, where the husband and wife have lived together harmoniously for years prior to his death: Gelb Estate, 425 Pa. 117, 125, 228 A. 2d 367, 371, 372 (1967). These considerations, taken together with the rule that a claimant against a decedent's estate has the burden of establishing his right by evidence which is clear, direct, precise and convincing (Petro v. Secary Estate, 403 Pa. 540, 542, 543, 170 A. 2d 325, 327 (1961)), which burden plaintiffs have failed to meet, further compels our conclusion that Mrs. Dunnick, as a result of Judge Gross' adjudication of October 9, 1951, in the Orphans' Court of York County, wherein that court concluded the effect of her antenuptial agreement and the subsequent agreements and stipulations relative thereto acquired her interest in the $30,000 in question outright and without restriction or limitation of any sort. It follows, therefore, that the claim of the within plaintiffs to any portion of that sum, in remainder, as heirs of Dr. Dunnick, through their deceased parent, Dana Delano Dunnick, cannot be sustained.

Accordingly, we make the following

## FINAL ORDER

Now July 24, 1970, the claim of Dana D. Dunnick, Jr., and Sally A. Horn, plaintiffs, as embodied in the petition heretofore filed by them in the above-captioned matter is hereby denied and the rule issued February

24, 1969, directed against the executor and trustee to show cause why said claim should not be paid, is hereby discharged.

